# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**CHAS SIMONSON**                                                           **PLAINTIFF**

**v.**                                                         **No. 4:23-cv-00026-MPM-JMV**

**DOLGENCORP, LLC, et al.**                                      **DEFENDANTS**

## ORDER

This matter is before the Court on Defendant Dolgencorp, LLC's ("Dolgencorp") Motion for Summary Judgment [65]. Plaintiff, Chas Simonson ("Simonson"), filed a response in opposition to the Motion [69], and the Court, having reviewed the record and carefully considered the applicable law, is now prepared to rule.

## BACKGROUND

Simonson has been self-employed as a truck driver for more than twenty years. In February of 2021, Simonson picked up a load of Twinkies in Nebraska or Kansas for delivery to Dolgencorp's Mississippi Distribution Center. About three hours into the day-and-a-half drive to Mississippi, Simonson experienced a snow and ice storm that continued through his arrival at Dolgencorp's Distribution Center. Upon arrival at the Distribution Center around 3 p.m. on February 16, 2021[1], Simonson pulled into the staging area, which includes a parking lot before one would reach the guard shack. Simonson parked at the last slot, which was the farthest point to park in the staging area at the Distribution Center. When he pulled into the staging area, Simonson noticed that there was about two inches of ice on the parking lot and that it was snowing and there was also freezing rain. Simonson was experienced in walking on snow and ice and attempted to

---

[1] The Court notes that Plaintiff's Complaint alleges the incident occurred on February 16, 2021 [2], while Defendant's Notice of Removal [1] states the date of Plaintiff's slip and fall as February 16, 2022 [1], and Defendant's counsel at Plaintiff's deposition stated the date of Plaintiff's slip and fall as February 16, 2020 [65].

check in with the guard twice, walking from his parked truck to the guard shack, but the guard was not present. Once another truck left, Simonson was able to move his truck closer to the guard gate. Simonson had to wait approximately two hours in the staging area where he parked the truck until the guard returned so he could check in and deliver the load. The main entrance to the Distribution Center is far removed and separate from the parking lot and guard shack where the truck drivers park. While making his fourth walk back to his truck from the guard shack, Simonson slipped and fell on ice on the right side of his truck in the parking lot and broke his right ankle and suffered pain in his right ribs. Simonson was close enough to his truck at the time he fell in the parking lot that he was able to brace himself with his left hand on the right fender of his truck. Simonson had surgery thereafter for the injury to his leg. [65].

Simonson alleges Dolgencorp was negligent in not properly maintaining a walkway on its premises in a reasonably safe condition, failing to warn him of any dangerous conditions not readily apparent of which they knew or should have known in the exercise of reasonable care, and failing to conduct reasonable inspections to discover dangerous conditions existing on the premises and to correct any such dangerous conditions. In his complaint, Simonson requests monetary damages arising from alleged serious bodily injury, physical pain and emotional distress, medical expenses, permanent physical restrictions, limitations, or disability, loss of enjoyment of life and earning capacity, and aggravation of a pre-existing condition.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). At the summary judgment stage, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). If a moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law, the nonmoving party "must come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1076.

## **ANALYSIS**

Plaintiff Simonson posits that Defendant Dolgencorp is not immune from liability because his duties as a truck driver delivering goods were not intimately connected to the work he was contracted to do. In addition, Plaintiff Simonson asserts that Defendant Dolgencorp is not relieved of its duty to provide a reasonably safe working environment or to warn of dangers as he slipped and fell on a natural condition in the immediate vicinity of the main entrance and exit to the truck delivery gate at Defendant Dolgencorp's distribution center. Defendant Dolgencorp contends that there is no genuine issue of fact that Plaintiff Simonson knew of the danger of the ice prior to his injury. Defendant Dolgencorp also argues that Plaintiff Simonson is an independent contractor and that it had no control over the scope of how he performed his delivery or picked up his load and that premises owners in Mississippi are immune by statute from liability in situations where an independent contractor is injured from a danger that the contractor was aware of prior to the injury.

Moreover, Defendant Dolgencorp contends that Plaintiff knew of the danger of the ice prior to his injury and argues that Mississippi business owners are not responsible for the removal of natural accumulations of snow and ice from their parking lots that are considered to be far removed regions of a business. Defendant Dolgencorp asserts that Plaintiff fell in a remote area of the business premises and recognized and appreciated the ice on the ground and the dangers it presented.

"Premises liability analysis under Mississippi law requires three determinations: (1) legal status of the injured person, (2) relevant duty of care, and (3) defendant's compliance with that duty." *Cox v. Wal-Mart Stores East, L.P.*, 755 F.3d 231, 233 (5th Cir. 2014) (citation omitted). Mr. Simonson's status when the incident occurred was that of a business invitee. "While a premises owner is not an insurer of the safety of invitees, the premises owner does have a duty of reasonable care, to maintain its premises in a reasonably safe condition." *Pigg v. Express Hotel Partners, LLC*, 991 So. 2d 1197, 1199 (Miss. 2008). In addition, a premises owner has a duty to invitees "to warn of any dangerous conditions not readily apparent which the owner knew, or should have known, in the exercise of reasonable care and the duty to conduct reasonable inspections to discover dangerous conditions existing on the premises." *Id.* at 1199-200 (citations omitted). "The breach of either duty supports a claim of negligence." *Id.* at 1200.

"[A]n independent contractor is one who, in exercising an independent employment, contracts to do certain work according to his own methods, and without being subject to the control of his employer, except as to the product or result of his work." *Kughn v. Rex Drilling Co.*, 64 So. 2d 582, 585 (1953). Premises owners in Mississippi are immune by statute from liability where an independent contractor is injured from a danger that the independent contractor was aware of prior to the injury. *See, e.g.*, *Pippen v. Tronox, LLC*, 359 F. Supp. 3d 440, 445 (N.D. Miss. 2019). As stated by the statute, "[n]o owner, occupant, lessee or managing agent of property shall be liable

4

for the death or injury of an independent contractor or the independent contractor's employees resulting from dangers of which the contractor knew or reasonably should have known." *See id.* (quoting Miss. Code Ann. § 11-1-66). As regards the natural conditions, Mississippi business owners are not responsible for the removal of natural accumulations of snow and ice from parking lots of far removed regions of the premises. *See Fulton v. Robinson Indus., Inc.*, 664 So. 2d 170, 175 (Miss. 1995). The "natural-conditions" rule in *Fulton* clarifies the relationship between slip and fall cases, the open and obvious doctrine, and potentially dangerous natural conditions. *Id.* If an invitee is injured by a natural condition on a remote part of the business premises, and the danger was known and appreciated by the injured party, then there is no jury question. *See Wood v. RIH Acquisitions MS II, LLC*, 556 F.3d 274, 275-77 (5th Cir. 2009).

While an owner of a business "owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or warn of dangerous conditions not readily apparent, which owner or occupant knows of, or should know of in the exercise of reasonable care," invitees are "still required to use in the interest of [their] own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance." *See Fulton*, 664 So. 2d at 175 (citing *Jerry Lee's Grocery, Inc. v. Thompson*, 528 So. 2d 293, 295 (Miss. 1988), *Tate v. S. Jitney Jungle Co.*, 650 So. 2d 1347, 1351 (Miss. 1995)). As established by the "natural conditions" rule, parking lots are considered to be remote areas of business premises. *See id.* (determining that plaintiff was injured on a remote part of the business premises, the parking lot); *see also Lawrence v. Wright*, 922 So. 2d 1, 4 (Miss. Ct. App. 2004) (concluding as a matter of law that plaintiff was injured in the parking lot, that is a remote area of the business, rather than in a designated walkway or covered area immediately adjacent to and directly connected to the entrance or exit of the business).

5

Here, the record supports that Defendant Dolgencorp properly inspected the area before Mr. Simonson arrived and acted reasonably by contracting for snow and ice removal immediately upon discovering the oncoming winter storm and closing the distribution center. The evidentiary record includes depositions of Plaintiff Simonson, Johnny Mengarelli, a senior director with Defendant who testified about Defendant's safety manual, standard operating procedures, and safety meeting and safety team committee and records; and Billy Rogers, the manager of the distribution center at the time of Plaintiff's fall. Additional record evidence includes a weather analysis of the site on the date of Plaintiff's fall, Nic's Lawn Care Invoice for ice removal at Defendant's distribution center; Big Sand Lawn Service's Invoice of snow and ice removal at the parking and truck area at Defendant's distribution center; sign outside the staging area at Defendant Dolgencorp's distribution center; photographs of the location of the fall, the guard shack, and of Plaintiff Simonson's parked truck at the site; and Dollar General's policies and procedures. [65] Exs. 1-11; [69], Exs. 1-8.

It is undisputed that Plaintiff Simonson was self-employed and an independent contractor or employee of a third-party trucking company and not an employee of Defendant Dolgencorp. It is also undisputed that the approach of the winter storm was known by Plaintiff Simonson. Mr. Simonson spent approximately a day and a half driving to the distribution center and he was aware of the ice and snow on the ground of the distribution center upon arrival. Moreover, Plaintiff Simonson testified he picked up a load of Twinkies for delivery to Defendant's distribution center in Nebraska or Kansas and it took about a day and a half for him to arrive at the distribution center. Plaintiff encountered the snow and ice storm about three hours after picking up the Twinkies while driving to the distribution center, and when he got to Mississippi, it was all ice. When he arrived at the distribution center, Plaintiff observed snow and freezing rain and about two inches of ice on

the parking lot of the staging area at the distribution center where he parked his truck. Plaintiff testified that he has made deliveries in snowy and icy conditions all the time as a truck driver, and being from Wisconsin, he was used to walking on snow. Plaintiff Simonson had made the walk to the guard shack three times to and from his truck, and it was on the fourth walk back from the guard shack to his truck in the parking lot that he fell. Plaintiff was told to stay in his truck until he was called by the guard shack attendant.

It is undisputed that Defendant Dolgencorp had the distribution center (parking area, grounds, sidewalk) adequately inspected and made arrangements to have the snow and ice removed once the snow stopped or subsided; and that Defendant Dolgencorp provided an appropriate warning by alerting drivers of the conditions and in the closure of the distribution center because of the winter storm conditions. Despite the closure of the distribution center, drivers like Plaintiff with prescheduled appointments and already on the road during the storm were difficult to stop from coming to the guard shack. A third-party company employs the guard for the guard shack. Because the distribution center was closed there was not an employee of the third-party company in the guard shack and the gates were closed and locked. The usual practice would be for drivers to arrive during their appointment window at the facility, park in the truck staging area and call over the radio and drive up to the guard shack, and the guard would relay to the inbound receiving manager and tell them what door to go to for the unloading of the truck when it is time. Although occasionally it may have occurred, drivers would not typically walk to the guard shack despite a sign in the parking area outside of the guard shack indicating drivers should park and walk to the guard shack and radio for their assigned bay. Where Plaintiff fell is in a remote area of the distribution center and approximately 400 to 450 feet from the nearest building on site, which is the guard shack. Mr. Mengarelli testified that he was present on site with an investigator

external to Defendant who measured the distance from the place where Plaintiff fell to the guard shack with a measuring wheel and that he used an iPhone application to also measure the distance.

It is also undisputed that this type of storm was very uncommon for this location and that this was the only time in Mr. Rogers's three-year period at the distribution center that he had to close the building for weather. The weather leading up to the date of Plaintiff's fall was so unusual for the area that Mr. Rogers recalled having to secure Nic, who provided landscape services at the distribution center to remove the snow and ice with a tractor and a Bobcat because no one had snow removal equipment. Mr. Rogers consulted with Nic about clearing the snow and ice as early as Monday, February 15, 2021, when he observed the magnitude of the snow and ice. In addition, Mr. Rogers had run the building for Defendant in Pennsylvania where snow was common, and it was not his practice to attempt to remove snow and icefall while it is still falling, which was a procedure consistent with his experience working for other distribution companies throughout his career. Moreover, Mr. Rogers would not pre-salt at the Pennsylvania facility. After the snow and ice stopped at Defendant's distribution center, Nic started the snow and ice removal in the employee parking lot and then the truck staging area and the guard shack entry area. Mr. Mengarelli also testified that he had worked on preparing for the coming storm two or three days prior by contacting the lawn service to find a company to remove the snow and ice.

Simonson, an invitee, was injured by a natural condition on a remote part of Dolgencorp's premises, and the danger was known and appreciated by Simonson. And Dolgencorp is immune by statute from liability because of Simonson's status as an independent contractor as Simonson was injured by a dangerous condition, the snow and ice covered parking lot, which he was aware of prior to his fall. No breach of duty, therefore, exists to support a claim of negligence. Thus, after assessing the evidence, the Court concludes that no genuine issues of material fact exist regarding

Plaintiff Simonson's claims. In light of the foregoing, Defendant Dolgencorp's Motion for Summary Judgment should be granted.

## CONCLUSION

For these reasons, Defendant Dolgencorp is entitled to the requested relief. Accordingly, Defendant Dolgencorp's Motion for Summary Judgment [65] is **GRANTED**, and Plaintiff Simonson's claims are **DISMISSED**. All pending motions are **DISMISSED** as moot. A separate judgment will be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED** this the 12th day of June, 2024.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**